# 25-613

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

AMY MOORE, MIA LYTELL, NATASHA TAGAI, EMMA HOPPER, BRITTANY HASSEN, BRITTANY REYES,

*Plaintiffs-Appellees,*

STEPHANIE CALDWELL,

*Plaintiff-Counter-Defendant-Third-Party-Defendant,*

v.

HOWARD RUBIN,

*Defendant-Counter-Claimant-Appellant,*

JENNIFER POWERS,

*Defendant-Third-Party-Plaintiff-Counter-Claimant,*

YIFAT SCHNUR, STEPHANIE SHON, BLUE ICARUS, LLC, DOE COMPANY, JOHN DOE,

*Defendants,*

BALESTRIERE FARIELLO,

*Intervenor.*

*On appeal from the U.S. District Court for the Eastern District of New York*

## BRIEF FOR INTERVENOR
## Balestriere Fariello

**BALESTRIERE**
225 Broadway, 29th Floor
New York, New York 10007
(212) 540-7362
michael.weiner@balestrierefirm.com
*Attorneys for Non-Party Intervenor*
BALESTRIERE FARIELLO

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................. 1

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF THE CASE .................................................................... 4

      The Underlying Litigation ................................................................. 4

      Rubin's Post-Trial Failed Attempts to Undermine the Verdict ......................... 5

      The Fee Application Under Statute ................................................... 5

      Appeal and Intervention ................................................................. 6

COUNTERSTATEMENT OF THE ISSUES PRESENTED ........................................ 7

STANDARDS OF REVIEW ....................................................................... 8

SUMMARY OF THE ARGUMENT .............................................................. 9

ARGUMENT ........................................................................................ 10

I.     THE DISTRICT COURT PROPERLY AWARDED
      ATTORNEYS' FEES UNDER 18 U.S.C. SECTION 1595(a) ............. 10

II.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION
      IN SETTING REASONABLE HOURLY RATES .............................. 11

III.   THE DISTRICT COURT ACTED WITHIN ITS DISCRETION
      IN FINDING THE HOURS REASONABLE ...................................... 12

IV.   THE DISTRICT COURT ACTED WITHIN ITS DISCRETION
      IN AWARDING NECESSARY COSTS AND EXPENSES ............... 13

V.    RUBIN'S ARGUMENTS SIMPLY REPACKAGE HIS FAILED
      OPPOSITION IN THE DISTRICT COURT AND PROVIDE
      NO BASIS FOR REVERSAL ............................................................. 14

CONCLUSION........................................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................................... 16

<u>TABLE OF AUTHORITIES</u>

**CASES:**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ................................................................ 8, 9

*Arbor Hill v. County of Albany*, 493 F.3d 110 (2d Cir. 2007) ...................................... 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................... 3, 8, 11

*Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019) ....................... 3, 8, 9, 12, 13, 14

*Moore, et al. v. Rubin*, Case No. 1:17-06404 ................................................ 4

*Yifat v. Schnur et al. v. John Balestriere et al.*, Index No. 160095/2018 ..................... 2

**STATUTES:**

18 U.S.C. § 1591 ...................................................................... 2, 4

18 U.S.C. § 1595 ...................................................................... 2, 4

18 U.S.C. § 1595(a) .......................................................... 1, 2, 5, 10, 11

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1367 ......................................................................... 1

## **JURISDICTIONAL STATEMENT**

The federal district court for the Eastern District of New York ("the District Court") had subject-matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 because plaintiffs brought claims under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591, 1595, which arise under federal law. The District Court also had supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367.

On February 14, 2025, the District Court entered an order awarding attorneys' fees and costs to Intervenor trial court level Plaintiffs' counsel Balestriere Fariello pursuant to 18 U.S.C. § 1595(a). The District Court entered an amended judgment on February 18, 2025. On March 14, 2025, Defendant-Appellant Howard Rubin filed a notice of appeal from this judgment (in addition to his earlier appeal from the compensatory and punitive damages judgment which the district court had entered against him and in favor of Plaintiffs-Appellees). See Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction over the appeal under 28 U.S.C. § 1291, which grants courts of appeals jurisdiction over appeals from final decisions of the district courts.

## **PRELIMINARY STATEMENT**

This appeal is the latest attempt by Defendant-Appellant Howard Rubin ("Rubin") to evade the consequences of his liability under the Trafficking Victims

Protection Act ("TVPA"), 18 U.S.C. §§ 1591, 1595. After a seven-year investigation and litigation marked by scorched-earth tactics and overwhelming defense resources, a federal jury found Rubin liable for sex trafficking and awarded nearly $3.85 million in damages to six victims, the Plaintiff-Appellees, who in other matters (including one Rubin has paid for in order for one of his many lawyers to sue those victims (*Yifat V. Schnur et al. v. John Balestriere et al.*, Index No. 160095/2018)) are referenced as the EDNY Sex Trafficking Victims. The District Court denied Rubin's post-trial motions in their entirety, upholding the jury's verdict.

Pursuant to § 1595(a), prevailing plaintiffs are entitled to recover their reasonable attorneys' fees and costs. After carefully reviewing contemporaneous time records, market data on prevailing rates in complex federal litigation, and the extraordinary circumstances of this case, the District Court awarded fees and costs to Intervenor Balestriere Fariello ("BF"), Plaintiffs-Appellees' trial counsel. Judge Brian M. Cogan remarked that the case "had as many defense resources from large firms thrown at it as any [he had] ever seen," and he stressed that Plaintiffs' counsel was particularly well suited to litigate it given their unique experience.

Rubin's appeal raises no new legal questions. Instead, he repackages arguments already considered and rejected by the district court: that plaintiffs' counsel's rates were excessive, that hours were inflated, and that costs should not include necessary litigation financing expenses. Each argument ignores the wide

2

discretion afforded to district courts in fee determinations, and the fact that the District Court did not even award plaintiffs' counsel all fees or costs they sought, carefully determining what hourly rates should apply (lower than those which plaintiffs' counsel sought) and making an across the board cut on plaintiffs' counsel's fees, largely for not recording hours in detail, but following the more traditional commercial litigation invoicing practice of so-called block billing.

This Court applies a deferential abuse-of-discretion standard, and the District Court's decision readily withstands that review. The District Court meticulously applied governing law, including *Arbor Hill v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019), and *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Its findings—that the hourly rates were consistent with prevailing New York City market rates (albeit those of the Eastern District of New York and not that of the Southern District of New York, where all counsel are located), that the 12,000+ hours expended were reasonable in light of Rubin's aggressive defense, and that the requested very limited costs found reimbursable were necessary—are unassailable.

Rubin's arguments are not only legally deficient, but also part of his pattern of using litigation to intimidate victims and punish their counsel. Just as the jury rejected his narrative at trial, and the District Court rejected his post-verdict motions, this Court should affirm the fee award in full.

3

## STATEMENT OF THE CASE

*The Underlying Litigation*

After months of investigation by Intervenor BF, and failed attempts at resolution – that, it turned out, provided Rubin time to destroy evidence of his sex trafficking venture – in November 2017 Plaintiffs-Appellees initiated their suit against Rubin. At first three women, later joined by others so that six victims proceeded to trial —Amy Moore, Mia Lytell, Natasha Tagai, Emma Hopper, Brittany Hassen, and Brittany Reyes ("the EDNY Plaintiffs")—prosecuting claims against Rubin in the Eastern District of New York against Rubin for violations of the federal sex trafficking statute, TVPA, 18 U.S.C. §§ 1591, 1595, and related common-law claims. Following a trial, a jury eventually found that Rubin, a wealthy former bond trader, had operated a sex trafficking enterprise involving coercion, physical abuse, sexual violence, torture, and rape (*Moore, et al. v. Rubin*, Case No. 1:17-06404, the "EDNY Sex Trafficking Action").

BF represented the EDNY Plaintiffs from investigation through trial. Following a nearly three-week jury trial in April 2022, the jury returned a unanimous verdict finding Rubin liable under the TVPA as to all six EDNY Plaintiffs and awarded $3.85 million in compensatory and punitive damages. The District Court entered judgment accordingly.

*Rubin's Post-Trial Failed Attempts to Undermine the Verdict*

Rubin moved under Rules 50 and 59 for judgment as a matter of law or a new trial, arguing principally that the TVPA did not apply to the facts. On March 20, 2024, District Court Judge Cogan denied the motion in full, holding that Rubin's conduct fell squarely within the statute and that the jury's verdict was supported by ample evidence.

*The Fee Application Under Statute*

Pursuant to 18 U.S.C. § 1595(a), plaintiffs moved for recovery of attorneys' fees and costs. On May 2, 2025, Intervenor BF filed a motion supported by detailed billing records, market surveys, and declarations, seeking $8,793,940.80 in fees and $2,035,386.10 in costs. JA-90-593, Motion for Attorney's Fees and Reimbursement of Costs, dated May 2, 2024 (the "BF Fee Motion"). In the end, the District Court awarded $4,815,033.25 in fees and $15,114.90 in costs. JA-769-784, Memorandum Decision and Order, dated February 14, 2025 (the "Fee Award"). Rubin opposed, challenging the hourly rates, total hours, and categories of costs, and arguing that the request was excessive. BF replied, demonstrating that its rates were consistent with the prevailing New York City market, that the hours were necessary to litigate a vigorously defended case over seven years, and that the modest costs sought were reasonable and essential.

5

On February 14, 2025, Judge Cogan granted the motion while applying lower hourly rates to plaintiffs' counsel, criticizing plaintiffs' counsel (which is not a so-called plaintiffs' firm, but handles a range of trials and investigations work) for employing a block-billing timesheet method, and applying a 15% across the board cut on the fees sought. JA-782. The District Court also did not find reimbursable the litigation funding costs which Plaintiff-Appellees, through their engagement agreements with Intervenor, had incurred. Judge Cogan determined that the hourly rates were consistent with market practice in the Eastern District of New York, that in fact the more than 12,000 hours expended were reasonable in light of Rubin's scorched-earth tactics, and that the actual costs found to be reimbursable were both modest and necessary. Judgment was entered accordingly. JA-785-786, Amended Judgment, dated February 18, 2025.

### Appeal and Intervention

The engagement agreements between the plaintiffs and Intervenor did not cover work on an appeal, and by August 2024, BF entered dissolution largely owing to a dispute with a litigation funder. As such, BF advised Plaintiff-Appellees of the dissolution, provided them with a full copy of the entire court record, and was available to speak to any appellate counsel whom Intervenor's now former clients hired.

On March 14, 2025, Rubin filed his notice of appeal, challenging both the underlying liability judgment and the Fee Award. On August 22, 2025, BF moved to intervene in the appeal to protect its contractual and statutory fee interest. This Court granted the motion, recognizing that BF's fee entitlement was directly at stake. The Plaintiffs-Appellees' appellee briefs are due September 25, 2025. BF files this separate appellee brief on the same day in its limited capacity as Intervenor solely to defend the District Court's Fee Award.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

Defendant-Appellant Rubin's brief raises no genuine legal question. Instead, it asks this Court to second-guess the District Court's discretionary judgment on attorneys' fees. The real issues are therefore:

1. Whether the District Court acted within its discretion in setting hourly rates consistent with prevailing New York City market standards for complex litigation, in particular those in the district where the litigation took place, and where the trial was held, and in light of the fact that all counsel regularly practice in the Southern District of New York where the rates for lawyers are somewhat higher than those in the Eastern District.

2. Whether the District Court acted within its discretion in finding reasonable the hours expended, in particular where the District Court noted that Rubin

7

himself pursued a maximally aggressive defense that prolonged and complicated the litigation.

3. Whether the District Court acted within its discretion in awarding modest and documented costs of $15,114.90.

Each issue was fully considered and resolved by the District Court, whose factual findings are entitled to deference.

## STANDARD OF REVIEW

An award of attorneys' fees is reviewed for abuse of discretion. *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019). "A district court abuses its discretion if it (1) bases its decision on an error of law or clearly erroneous factual finding, or (2) renders a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

Within that framework, a district court's determination of reasonable hourly rates and hours expended are factual findings subject to review for clear error. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Legal questions, such as whether a statute authorizes a fee award, are reviewed de novo. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

This Court has emphasized that "considerable deference" is owed to district courts in setting fee awards, because "[a] district court has 'far superior familiarity

with the local legal market' and with the particular case." *Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 190).

## SUMMARY OF ARGUMENT

The District Court's Fee Award should be affirmed. Rubin's appeal merely repackages arguments the District Court already considered and rejected after extensive briefing. Under the deferential abuse-of-discretion standard, particularly in light of the fact that the District Court (1) determined that lower-than-sought hourly rates should apply to plaintiffs' counsel's timekeeper who worked for years on the litigation, (2) found that certain points, in particular the use of block billing, merited an across the board 15% reduction in the fees, and (3) determined that the lion's share of costs, for litigation funding, experts, and discovery (where actual out of pocket costs were over $600,000), Rubin's challenge fails at every turn.

First, the TVPA expressly mandates an award of reasonable attorneys' fees and costs to prevailing plaintiffs. The jury verdict and judgment rendered plaintiffs prevailing parties, and Rubin does not seriously dispute entitlement.

Second, the District Court reasonably determined that BF's hourly rates were consistent with prevailing New York City market rates in the Eastern District of New York for complex federal litigation. The District Court credited the firm's experience, skill, and effectiveness in litigating a case of extraordinary complexity against a defendant who deployed elite defense counsel.

Third, the District Court found the hours expended—over 12,000 across seven years—to be reasonable in light of Rubin's excessively contentious litigation tactics. Judge Cogan specifically noted that Rubin had "had as many defense resources from large firms thrown at it as any case [he had] ever seen" and underscored the exceptional qualifications of the EDNY Plaintiffs' counsel, remarking: "I'd like to see defendant come up with someone who would be better qualified to handle this case based on experience alone and be willing to take it on."JA-779; JA-776.

Fourth, the District Court properly awarded highly limited costs, including litigation finance expenses, expert fees, and trial support costs, finding them modest and necessary to level the playing field in a hard-fought trial.

Finally, Rubin's appellate brief is little more than a repetition of his unsuccessful opposition to the BF Fee Motion. The District Court's factual findings are well-supported and entitled to deference. Even if this Court might have exercised discretion differently in the first instance, that is not the standard of review. No abuse of discretion occurred, and the judgment should be affirmed.

## **ARGUMENT**

## I. **THE DISTRICT COURT PROPERLY AWARDED ATTORNEYS' FEES UNDER 18 U.S.C. SECTION 1595(a).**

Congress enacted the Trafficking Victims Protection Act to provide both criminal accountability and civil remedies for victims of human trafficking. 18

U.S.C. § 1595(a) expressly provides that a prevailing plaintiff "shall recover damages and reasonable attorneys' fees."

The Plaintiffs-Appellees secured a unanimous jury verdict on their TVPA claims, resulting in a judgment of $3.85 million. JA-70, Jury Verdict Sheet, dated April 7, 2022. That result renders them prevailing parties as a matter of law. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Rubin does not meaningfully contest entitlement; instead, his appeal is confined to reasonableness. Accordingly, the sole issue before this Court is whether the District Court abused its discretion in calculating the amount. It did not, warranting this Court affirming the fees and costs judgment.

## II. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN SETTING REASONABLE HOURLY RATES.

In assessing hourly rates, Judge Cogan applied the "presumptively reasonable fee" framework from *Arbor Hill* and *Lilly*. He reviewed BF's requested rates—ranging from $600 to $950 per hour for senior attorneys and $300 to $450 for associates—against prevailing New York City market rates for complex federal litigation. The District Court concluded that these rates were consistent with those charged by comparable firms in Manhattan and justified by BF's demonstrated expertise but nonetheless applied lower Eastern District of New York rates. The District Court observed that the Plaintiffs' lead counsel's prior experience uniquely

suited him to handle the case and challenged Rubin to identify anyone better qualified.

Rubin's assertion that Eastern District rates should be lower was fully considered and rejected. The District Court reasonably looked to the broader New York City market, consistent with this Court's precedent recognizing Manhattan rates as the benchmark for complex federal litigation. See *Lilly*, 934 F.3d at 231–32. No clear error taints that factual finding.

## III. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN FINDING THE HOURS REASONABLE.

BF submitted contemporaneously maintained time records reflecting more than 12,000 hours of attorney work over seven years. Rubin – who fielded nearly two dozen professionals in court (let alone others outside of court) working in his and his co-defendant's favor during the three week trial, while all six Plaintiffs had only lawyers and a paralegal in court during the trial – objected, claiming duplication, inefficiency, and vague billing. The District Court rejected those arguments, crediting the necessity of the work given Rubin's aggressive defense.

As Judge Cogan observed, "This case had as many defense resources from large firms thrown at it as any case I have ever seen." JA-779. The record supports that finding: Rubin was represented by multiple attorneys at Dechert LLP, and Rubin paid for him and other Defendants to file multiple motions to dismiss, multiple motions for summary judgment, multiple motions for sanctions, and a series of other

12

motions, including in discovery, with more than a dozen lawyers present at Rubin's deposition and generally a dozen or more of Rubin's lawyers present at each of the depositions of the EDNY Plaintiffs suing him. And after losing at trial, he filed even more motions that delayed resolution of this dispute for nearly two years, then has prosecuted two appeals, in seriatim, further delaying resolution and further increasing costs to Plaintiffs-Appellees. This Court has long recognized that defendants who engage in protracted litigation cannot later complain of the fees their conduct necessitated. See *Hensley*, 461 U.S. at 440; *Lilly*, 934 F.3d at 234. In that context, the hours BF expended were proportionate and necessary.

## IV. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN AWARDING NECESSARY COSTS AND EXPENSES.

BF sought $15,114.90 in costs for expert fees, trial support, litigation financing interest, and related expenses. Rubin objected, claiming these costs were unnecessary or improper. Judge Cogan disagreed, finding that they were modest, well-documented, and essential to the successful prosecution of the case.

The District Court noted that litigation financing was particularly necessary given Rubin's extraordinary wealth and ability to deploy elite defense counsel. Ensuring resource parity was vital to maintaining a fair trial. Such cost awards fall comfortably within the district court's discretion.

## V. RUBIN'S ARGUMENTS SIMPLY REPACKAGE HIS FAILED OPPOSITION IN THE DISTRICT COURT AND PROVIDE NO BASIS FOR REVERSAL

Rubin's appellate brief does not raise new arguments; it simply repeats those made in his opposition to the BF Fee Motion. Each was fully addressed by the District Court in its February 14, 2025 Fee Award. BF's rates were already found consistent with prevailing market standards. BF's hours were already found necessary in light of Rubin's own litigation strategy. BF's costs were already found reasonable and modest. The Second Circuit has repeatedly emphasized that "[w]e will not disturb a district court's factual determinations absent clear error." *Lilly*, 934 F.3d at 227. Rubin identifies no legal error and no factual finding lacking record support. His appeal is nothing more than a request that this Court second-guess the District Court's discretionary judgment. That is not the function of appellate review.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's February 14, 2025 order awarding attorneys' fees and costs should be affirmed in full. Rubin's appeal raises no new issues, identifies no legal error, and points to no factual finding unsupported by the record. The District Court's judgment falls well within the broad discretion afforded by this Court's precedents.

Dated: New York, New York
      September 25, 2025

By: _s/ Michael J. Weiner_____
Michael J. Weiner
**BALESTRIERE**
28 Liberty Street, Sixth Floor
New York, New York 10005
Telephone: (212) 540-7362
*Attorney for Intervenor Former*
*Plaintiffs' Counsel Balestriere*
*Fariello*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). This brief contains 3,024 words, excluding the parts exempted by Rule 32(f), as counted by Microsoft Word.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

It is so certified on this 25th day
of September 2025,

*s/ Michael J. Weiner*
_____
Michael J. Weiner

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

BRIEF FOR INTERVENOR BALESTRIERE FARIELLO

was caused to be served upon all counsel/parties of record via the Court's ECF/ACMS System, as indicated, this 25TH day of September, 2025, upon the following:

*See attached Service Schedule A*

Date: September 25, 2025

*/ s / Michael Weiner*

Michael Weiner, Esq.

*Attorney for Appellant*

## SERVICE SCHEDULE A

Brian J. Isaac, Esq.
Pollack Pollack Isaac & Decicco
250 Broadway, Suite 600
New York, NY 10007

Matthew William Schmidt, Esq.
Schmidt Law Corporation
116A Main Street
Tiburon, CA 94920

Natasha Tagai
1080 NE 215 Street, Apartment #213
Miami, FL 33179

Brittany Hassen
2928 West 5th Street, Apartment #7T
Brooklyn, NY 11224

Brittany Reyes
44 Merrill Avenue
East Brunswick, NJ 08816

May Chiang, Esq.
Benjamin E. Rosenberg, Esq.
Edward Agnew McDonald
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036